UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-22

| | |
|---|---|
| MONICA GARRETT,<br><br>        Plaintiff,<br><br>v.<br><br>SEPHORA USA, INC.,<br><br>        Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

NOW COMES Plaintiff Monica Garrett ("Ms. Garrett" or "Plaintiff") and hereby complains and alleges against Defendant Sephora USA, Inc. ("Sephora" or "Defendant") for violations of the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

## PARTIES, JURISDICTION, AND VENUE

1. At all relevant times, Ms. Garrett was a resident of Mooresville, North Carolina.

2. Defendant is a Michigan corporation with its principal place of business in San Francisco, California. Defendant maintains a registered office at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

3. Ms. Garrett worked for Defendant at Defendant's Northlake Mall location in Charlotte, North Carolina.

4. This Court has original jurisdiction under 28 U.S.C. § 1331 over Ms. Garrett's FMLA claims because the claims arise under the laws of the United States.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the events giving rise to Ms. Garrett's claims occurred in this district.

6. At all relevant times, Defendant was a "covered employer" as defined by the FMLA, 29 C.F. R. §§ 825.104 *et seq.*

7. At all relevant times, Ms. Garrett was an "eligible employee" as defined by the FMLA, 29 C.F.R. §§ 825.110 *et seq.*

## FACTUAL BACKGROUND

8. Defendant hired Ms. Garrett at their Northlake Mall location in Charlotte, North Carolina on or around October 15, 2015.

9. Ms. Garrett was initially employed as a lead in Defendant's skincare department.

10. Over the years, she received several promotions and raises. Her last promotion and raise was to the position of Client Experience Manager in early 2019.

11. Ms. Garrett performed her job well and her annual performance reviews reflected excellent performance.

12. Initially in the Client Experience Manager role. Ms. Garrett devoted 80% of her time to the sales floor and 20% of her time to office hours and administrative work.

13. After the Covid-19 pandemic reduced the staffing levels, Ms. Garrett was instructed to devote 100% of her time to the sales floor. As a result of this change, Ms. Garrett did not receive management updates on the computer, but received them by word of mouth.

14. Ms. Garrett encountered problems with her pregnancy in October 2020. She went to the doctor on October 8, 2020 and was instructed to return the next day.

15. On October 9, 2020, Ms. Garrett underwent an emergency medical procedure for a intrauterine fetal demise miscarriage.

2

16. On October 10, 2020, Ms. Garrett notified Defendant's human resource business partner, Stacie Belcher, and her manager, Katharine Jackson, via email of her emergency medical procedure.

17. Also on October 10, 2020, Ms. Garrett informed Belcher and Jackson that she would not be able to return to work for approximately 10 days.

18. Ms. Garrett confided the nature of her miscarriage to Jackson.

19. The miscarriage and the subsequent medical procedure is a serious health condition under the FMLA.

20. Defendant did not provide Ms. Garrett with a notice informing her of her rights under the FMLA.

21. Defendant did not provide Ms. Garrett with any documentation to complete, or have her medical providers complete and return to request FMLA leave.

22. Nevertheless, Garrett's serious health condition qualified her to take a protected leave of absence under the FMLA.

23. On October 10, 2020, Ms. Garrett inquired about getting in touch with Cigna (Defendant's third party benefits administrator) to submit short-term disability and/or leave of absence paperwork and also requested information about the proper call-off procedure.

24. Ms. Garrett later submitted a short-term disability claim. Her short-term disability claim was approved for October 18 through October 25, 2020.

25. During Ms. Garrett's medical leave of absence, she requested that her accrued but unused paid time off ("PTO") be applied to the 35 hours of time missed that would not be covered by short-term disability.

26. However, Defendant was resistant to paying Ms. Garrett these PTO hours and it took approximately three pay periods before Ms. Garrett was properly compensated.

27. Ms. Garrett returned to work on October 26, 2020.

28. After her return to work, Jackson did not speak to Ms. Garrett for four days, despite their shifts overlapping.

29. During the period she was on medical leave, Defendant allegedly changed certain policies regarding store closing and implemented a zero tolerance policy for leaving the office door open while counting money.

30. The new zero tolerance policy was not communicated to Ms. Garrett.

31. It was common practice at the Northlake store for employees to leave the door cracked open while counting money prior to the purported zero tolerance policy change.

32. In or around November 24, 2020, Ms. Garrett was counting money in the office while the door was cracked open. She was then issued a written warning for counting money with the door open for "violating company policy." Still, the new purported "zero tolerance policy" was not communicated to Ms. Garrett.

33. Prior to this incident, Ms. Garrett had never received written discipline from Defendant.

34. In or around November 25, 2020, Ms. Garrett was working in the office and left to grab a piece of paper off the printer in the other room. She left the office door shut but unlocked and unattended. On that specific day, the district manager Lindsey Piltcher was on-site and discovered the door unlocked. However, no disciplinary action was taken towards Ms. Garrett at this time.

35. Upon information and belief, other employees who did not take a protected medical leave of absence continued to count money with the office door open after implementation of the zero tolerance policy and were not terminated.

36. Upon information and belief, other employees who did not take a protected medical leave of absence continued to leave the office unlocked and unattended after implementation of the zero tolerance policy and were not terminated.

37. Ms. Garrett continued to report to work as normal and worked through the 2020 Black Friday weekend, which is an extremely busy time of year.

38. On December 3, 2020, Ms. Garrett was pulled aside by Jackson and Piltcher and informed that she was being terminated for allegedly "violating company policy."

39. Upon information and belief, the alleged policy violated was regarding leaving the office door open and/or unlocked..

40. Ms. Garrett explained to Jackson and Piltcher that she was unaware of the new zero tolerance policy.

41. Defendant's alleged reason for terminating Ms. Garrett's employment is a pretext for retaliation for her taking a medical leave of absence.

42. Defendant further terminated Ms. Garrett in retaliation for attempting to exercse right to a protected leave of absence under the FMLA.

43. After her termination, Ms. Garrett struggled to find subsequent employment. She ultimately became reemployed in September 2021.

## COUNT I
**Interference - Family and Medical Leave Act of 1993 ("FMLA")**
**(29 U.S.C. §§ 2615 *et seq.*)**

44. The foregoing paragraphs are incorporated herein by reference.

45. Belcher and Jackson were aware that Ms. Garrett required an emergency medical procedure that required her to be out of work for medical reasons.

46. Ms. Garrett's intrauterine fetal demise miscarriage and related procedure is a serious health condition under the FMLA.

47. Thus, Defendant was aware that Ms. Garrett had suffered a qualifying event under the FMLA.

48. Defendant prevented Garrett from taking her lawfully permitted FMLA leave under 29 U.S.C. § 2612(a)(1)(D) for her serious health condition.

49. Defendant denied, interfered with, and restrained Ms. Garrett from the lawful exercise of her substantive rights provided under the FMLA including, but not limited to, failing to inform Ms. Garrett of her rights under the FMLA, failing to provide her with an opportunity to submit FMLA-supporting documentation, and failing to provide Ms. Garrett with FMLA leave.

50. Ms. Garrett has suffered damages because of Defendant' unlawful conduct.

51. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a), by interfering with Ms. Garrett's lawful exercise of her rights under FMLA, was willful and/or lacking of good faith.

52. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

53. Ms. Garrett is entitled to her attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 2617(a)(3) of the FMLA.

54. Ms. Garrett is further entitled to any and all relief permitted under the FMLA, including equitable relief.

# COUNT II
**Retaliation in violation of the Family Medical Leave Act of 1993, as amended**
**(29 U.S.C. §§ 2601 *et seq.*)**

55. The foregoing paragraphs are incorporated herein by reference.

56. Ms. Garrett engaged in protected activity by taking FMLA leave.

57. Defendant's management was aware that Ms. Garrett requested leave for an FMLA-qualifying reason.

58. After Ms. Garrett took FMLA-qualifying leave,[1] Defendant retaliated against Ms. Garrett by resisting paying her PTO hours, refusing to speak to her, issuing written discipline, and terminating Ms. Garrett's employment.

59. Defendant's aforementioned adverse employment actions were causally connected to Ms. Garrett's protected activity of FMLA leave, as shown by several factors, including but not limited to the immediate proximity in time between the protected FMLA leave and the adverse actions.

60. Ms. Garrett has suffered damages because of Defendant's unlawful conduct.

61. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(2), by discriminating and retaliating against Ms. Garrett because she engaged in protected activity under the FMLA, was willful and/or lacking of good faith. As such, Ms. Garrett is entitled to liquidated damages.

62. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

63. Ms. Garrett is entitled to her attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 2617(a)(3) of the FMLA.

---

[1] Ms. Garrett was on a medical leave of absence and short-term disability leave that also qualified for FMLA leave. However, Defendant interfered with her right to take concurrent FMLA leave and inform her of her rights to take protected leave without fear of losing her job.

64. Ms. Garrett is further entitled to any and all relief permitted under the FMLA, including equitable relief.

## PRAYER FOR RELIEF

Wherefore, Ms. Garrett respectfully requests that this Court enter judgment in her favor and grant him the following relief:

1. An Order awarding Ms. Garrett damages for Defendant's violation of the FMLA, including backpay, front pay, lost employment benefits, equitable relief, and any other compensation lost because of Defendant's violation of the FMLA;

2. An Order awarding Ms. Garrett liquidated damages for Defendant's willful and malicious conduct.

3. An Order awarding Ms. Garrett the costs of this action;

4. An Order awarding Ms. Garrett reasonable attorneys' fees;

5. An Order awarding Ms. Garrett pre-judgment and post-judgment interest at the highest rates allowed by law; and

6. An Order granting any other necessary or appropriate relief to which Ms. Garrett is entitled under the law.

## JURY TRIAL DEMAND

Plaintiff Monica Garrett demands a trial by jury for all issues of fact.

*/s/ L. Michelle Gessner*
L. Michelle Gessner (NC Bar No. 26590)
Nicole K. Haynes (NC Bar No. 47793)
GESSNERLAW, PLLC
602 E. Morehead Street
Charlotte, North Carolina 28202
T: (704) 234-7442 ; F: (980) 206-0286
Email: michelle@mgessnerlaw.com
Email: nicole@mgessnerlaw.com
*Attorneys for Plaintiff*